1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11

ROBERT HAN,

12                                          Plaintiff,

13    v.

14    DR. D. HJERPE; L. FLORES; C.
SANCHEZ; DOES 1 - 20,

15
                                          Defendants.
16

17

Case No. 3:16-cv-00522-BAS-RBB

**ORDER:  (1)  GRANTING MOTION
TO PROCEED IN FORMA
PAUPERIS; AND (2) DISMISSING
COMPLAINT FOR FAILING TO
STATE A CLAIM**

18         Robert Han ("Plaintiff"), currently incarcerated at Calipatria State Prison located in

19    Calipatria, California, and proceeding pro se, has filed a civil rights complaint ("Compl.")

20    pursuant to 42 U.S.C. § 1983. (ECF No. 1.)

21         Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) when

22    he filed his Complaint; instead, he has filed a Motion to Proceed *In Forma Pauperis*

23    ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.)

24    **I.     Plaintiff's Motion to Proceed IFP**

25         All parties instituting any civil action, suit or proceeding in a district court of the

26    United States, except an application for writ of habeas corpus, must pay a filing fee. *See*

27    28 U.S.C. § 1914(a). An action may proceed despite a plaintiff's failure to prepay the

28    entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See*

1    *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, if the plaintiff is a

2    prisoner and he is granted leave to proceed IFP, he remains obligated to pay the entire fee

3    in "increments," *see Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless

4    of whether his action is ultimately dismissed. *See* 28 U.S.C. §§ 1915(b)(1) & (2); *Taylor*

5    *v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

6        Under 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act

7    ("PLRA"), prisoners seeking leave to proceed IFP must submit a "certified copy of the

8    trust fund account statement (or institutional equivalent) for the . . . six-month period

9    immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v.*

10    *King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the

11    Court assesses an initial payment of 20% of (a) the average monthly deposits in the

12    account for the past six months, or (b) the average monthly balance in the account for the

13    past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C.

14    §§ 1915(b)(1), (b)(4). The institution having custody of the prisoner then collects

15    subsequent payments, assessed at 20% of the preceding month's income, in any month in

16    which the prisoner's account exceeds $10, and forwards those payments to the Court until

17    the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

18        In support of his IFP Motion, Plaintiff has submitted a certified copy of his trust

19    account statement pursuant to 28 U.S.C. § 1915(a)(2) and Civ. L.R. 3.2. *See Andrews*,

20    398 F.3d at 1119. The Court has reviewed Plaintiff's trust account activity which shows

21    he has a current balance of $0.00. Accordingly, the Court **GRANTS** Plaintiff's Motion to

22    Proceed IFP (ECF No. 2) and assesses no initial partial filing fee per 28 U.S.C. §

23    1915(b)(1). *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be

24    prohibited from bringing a civil action or appealing a civil action or criminal judgment

25    for the reason that the prisoner has no assets and no means by which to pay [an] initial

26    partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a

27    "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to

28    pay . . . due to the lack of funds available."). However, the entire $350 balance of the

1    filing fee owed must be collected and forwarded to the Clerk of the Court pursuant to the

2    installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

3    **II.    Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

4    **A.    Standard of Review**

5    Notwithstanding Plaintiff's IFP status or the payment of any filing fees, the PLRA

6    also requires the Court to review complaints filed by all persons proceeding IFP and by

7    those, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of,

8    sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or

9    conditions of parole, probation, pretrial release, or diversionary program," "as soon as

10   practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these

11   provisions, the Court must sua sponte dismiss any complaint, or any portion of a

12   complaint, which is frivolous, malicious, fails to state a claim, or seeks damages from

13   defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Lopez v.*

14   *Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v.*

15   *Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

16   All complaints must contain "a short and plain statement of the claim showing that

17   the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are

18   not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

19   mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

20   (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether

21   a complaint states a plausible claim for relief [is] . . . a context-specific task that requires

22   the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere

23   possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also*

24   *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

25   "When there are well-pleaded factual allegations, a court should assume their

26   veracity, and then determine whether they plausibly give rise to an entitlement to relief."

27   *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000)

28   ("[W]hen determining whether a complaint states a claim, a court must accept as true all

3

16cv522

1   allegations of material fact and must construe those facts in the light most favorable to

2   the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that

3   § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

4          However, while the court "ha[s] an obligation where the petitioner is pro se,

5   particularly in civil rights cases, to construe the pleadings liberally and to afford the

6   petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n. 7 (9th Cir.

7   2010) (*citing Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985)), it may not

8   "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of*

9   *the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory

10  allegations of official participation in civil rights violations" are simply not "sufficient to

11  withstand a motion to dismiss." *Id*.

12      **B.     42 U.S.C. § 1983**

13         "Section 1983 creates a private right of action against individuals who, acting

14  under color of state law, violate federal constitutional or statutory rights." *Devereaux v.*

15  *Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of

16  substantive rights, but merely provides a method for vindicating federal rights elsewhere

17  conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks

18  and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1)

19  deprivation of a right secured by the Constitution and laws of the United States, and (2)

20  that the deprivation was committed by a person acting under color of state law." *Tsao v.*

21  *Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

22      **C.     Eighth Amendment Claims**

23         Plaintiff alleges that he "suffered an injury to his left index finger" while playing

24  basketball.  (Compl. at 2.)  That same day, due to "severe pain," Plaintiff sought medical

25  treatment.  (*Id.*)  Plaintiff, believing his finger was broken, was examined by Defendant

26  Flores who "took a brief, cursory glance" at Plaintiff's finger then "grabbed the injured

27  finger and jerked it up and down, causing excruciating pain."  (*Id.* at 3.)  Flores filled out

28  a "CDC 7362 Medical Request Form" which Plaintiff has attached as Exhibit "1."  (*Id.*,

1  ECF No. 1 at 8, Ex. 1, "Health Care Services Request Form.")  The form notes

2  "swelling" and "bruising" and it appears that x-rays were ordered by Defendant Flores.

3  (*Id.*) Plaintiff was sent back to his cell.  (*Id.* at 3.)

4  The next morning Plaintiff asked his "unit officer, Correctional Officer C.

5  Pennington," if he could return to the medical clinic to be examined by a physician.  (*Id.*

6  at 3-4.)  Plaintiff was later called to the yard clinic and examined by another nurse,

7  Defendant Sanchez.  (*Id.* at 4.)  Plaintiff told Defendant Sanchez that he could "not sleep

8  or move his injured left index finger."  (*Id.*)  Defendant Sanchez gave Plaintiff

9  medication for his pain and told Plaintiff that he would receive an x-ray the next day.

10  (*Id.*)  Plaintiff objected and "asked for his finger to be x-rayed that day."  (*Id.*)  Defendant

11  Sanchez refused.  (*Id.*)

12  The next day, Plaintiff went to the yard clinic again and inquired about receiving

13  the x-ray.  (*Id.*)  Plaintiff was "sent to his cell without treatment."  (*Id.*)  Later that same

14  day, in the afternoon, Plaintiff complained to Correctional Officer Pennington that he was

15  in "extreme pain."  (*Id.*)  Pennington called the clinic to find out the status of the x-rays

16  and was told that the "order for x-rays had been botched and had to be resubmitted."

17  (*Id.*)  Plaintiff received x-rays the following day and was examined by a physician.  (*Id.*

18  at 5.)

19  Only "deliberate indifference to serious medical needs of prisoners constitutes the

20  unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment."

21  *Estelle v. Gamble*, 429 U.S. 97, 103, 104 (1976) (citation and internal quotation marks

22  omitted). "A determination of 'deliberate indifference' involves an examination of two

23  elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the

24  defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

25  1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.

26  1997) (en banc) (quoting *Estelle*, 429 U.S. at 104).

27  First, "[b]ecause society does not expect that prisoners will have unqualified access

28  to health care, deliberate indifference to medical needs amounts to an Eighth Amendment

16cv522

1   violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992),

2   citing *Estelle*, 429 U.S. at 103-104. "A 'serious' medical need exists if the failure to treat

3   a prisoner's condition could result in further significant injury or the 'unnecessary and

4   wanton infliction of pain.'" *McGuckin*, 914 F.2d at 1059 (quoting *Estelle*, 429 U.S. at

5   104). "The existence of an injury that a reasonable doctor or patient would find important

6   and worthy of comment or treatment; the presence of a medical condition that

7   significantly affects an individual's daily activities; or the existence of chronic and

8   substantial pain are examples of indications that a prisoner has a 'serious' need for

9   medical treatment." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir.

10   1990)); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989).

11          Plaintiff alleges to have suffered a broken finger, which the Court finds sufficient

12   to plead an objectively serious medical need. *McGuckin*, 914 F.2d at 1059.  However,

13   even assuming Plaintiff's medical needs are sufficiently serious, his Complaint still fails

14   to include any further "factual content" to show that any Defendant acted with "deliberate

15   indifference" to his needs. *Id.* at 1060; *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th

16   Cir. 2006); *Iqbal*, 556 U.S. at 678.

17          Specifically, Plaintiff acknowledges that he was seen and examined by Defendants

18   Flores and Sanchez in the two days following his accident.  (*See* Compl. at 3-4.)  He

19   further acknowledges that both Defendants ordered x-rays for his finger and Defendant

20   Sanchez also provided him with pain medication.  (*Id.*)  While Plaintiff concludes

21   Defendants acted with "deliberate indifference" by failing to provide the x-rays in a

22   timelier manner, his Complaint lacks sufficient factual allegations to demonstrate any

23   Defendant's "purposeful act or failure to respond to [his] pain or possible medical need,"

24   and any "harm caused by [this] indifference." *Iqbal*, 556 U.S. at 678 (citing *Twombly*,

25   550 U.S. at 557); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett*,

26   439 F.3d at 1096). This is because to be deliberately indifferent, Flores and Sanchez's

27   acts or omissions must involve more than an ordinary lack of due care. *Snow v.*

28   *McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted);

16cv522

1  *Wilhelm*, 680 F.3d at 1122. "A difference of opinion between a physician and the

2  prisoner–or between medical professionals–concerning what medical care is appropriate

3  does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v.*

4  *Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Wilhelm*, 680 F.3d at 1122–23. Instead, Plaintiff

5  must plead facts sufficient to "show that the course of treatment the doctor[] chose was

6  medically unacceptable under the circumstances and that the defendant[] chose this

7  course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988

8  (citation and internal quotations omitted).

9       Plaintiff's Complaint, however, contains no facts sufficient to show that either of

10  Flores or Sanchez acted with deliberate indifference to his plight by "knowing of and

11  disregarding an[y] excessive risk to his health and safety." *Farmer v. Brennan*, 511 U.S.

12  825, 837 (1994).   Delays in receiving treatment do not by themselves show deliberate

13  indifference, unless the delay is alleged to be harmful. *See McGuckin*, 974 F.2d at 1060;

14  *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Here,

15  Plaintiff alleges no facts from which the Court could find that any delay that may have

16  occurred in diagnosing his broken finger caused any harm.

17       Plaintiff also seeks to hold Defendant Hjerpe liable because "Dr. Hjerpe was not

18  only made aware of plaintiff's injury, but also interviewed plaintiff for appeal."  (Compl.

19  at 5.)  However, it appears that any knowledge on the part of Defendant Hjerpe of

20  Plaintiff's claims came after he received the treatment.  There are no allegations that

21  Hjerpe was aware of the alleged delays in treatment while they were ongoing.  Plaintiff

22  seeks to hold Defendant Hjerpe liable for his role in responding to Plaintiff's grievances

23  but this alone is insufficient to find an Eighth Amendment violation.  *See Peralta v.*

24  *Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (finding no Eighth Amendment deliberate

25  indifference claim arising from a physician's response to a grievance where they relied

26  on the medical opinions of staff who investigated the plaintiff's "complaints and already

27  signed off on the treatment plan").

28

16cv522

1　　　　Accordingly, the Court finds that Plaintiff's Complaint also fails to state an Eighth

2　Amendment inadequate medical care claim against any named Defendant, and that

3　therefore, it is subject to sua sponte dismissal in its entirety pursuant to 28 U.S.C.

4　§ 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d

5　at 1004.

6　　　　Because Plaintiff is proceeding without counsel, and has now been provided with

7　notice of his Complaint's deficiencies, the Court will grant him leave to amend. *See*

8　*Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not

9　dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C.

10　§ 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint

11　could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th

12　Cir. 2012)).

13　　**III.　　Conclusion and Order**

14　　　　For the foregoing reasons, the Court:

15　　　　1.　　**GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a)

16　(ECF No. 2).

17　　　　2.　　**DIRECTS** the Secretary of the CDCR, or his designee, to collect from

18　Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing

19　monthly payments from his account in an amount equal to twenty percent (20%) of the

20　preceding month's income and forwarding those payments to the Clerk of the Court each

21　time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL

22　PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER

23　ASSIGNED TO THIS ACTION.

24　　　　3.　　**DIRECTS** the Clerk of the Court to serve a copy of this Order on Scott

25　Kernan, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

26　　　　4.　　**DISMISSES** Plaintiff's Complaint for failing to state a claim upon which

27　relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and **GRANTS**

28　him forty-five (45) days leave from the date of this Order in which to file an Amended

1  Complaint that cures all the deficiencies of pleading noted. Plaintiff's Amended

2  Complaint must be complete in itself without reference to his original pleading.

3  Defendants not named and any claims not re-alleged in the Amended Complaint will be

4  considered waived. *See* Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co.,*

5  *Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the

6  original."); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims

7  dismissed with leave to amend which are not re-alleged in an amended pleading may be

8  "considered waived if not repled").

9        5.        **DIRECTS** the Clerk of Court to mail to Plaintiff, together with this Order, a

10  blank copy of the Court's form "Complaint under the Civil Rights Act, 42 U.S.C.

11  § 1983" for his use in amending.

12        **IT IS SO ORDERED.**

13

14  **DATED:  May 4, 2016**

15

16  Hon. Cynthia Bashant
    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

16cv522